UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
EMMAGERALD SMITH,                              :
                                               :
                Plaintiff,                     :        **OPINION**
                                               :        **& ORDER**
-v-                                            :
                                               :        23-CV-02339 (JLC)
                                               :
MARTIN O'MALLEY,                               :
Commissioner of the Social Security            :
Administration,[1]                             :
                                               :
                Defendant.                     :
                                               :
---------------------------------------------------------------X

**JAMES L.  COTT, United States Magistrate Judge.**

        Plaintiff Emmagerald Smith commenced this action against the

Commissioner of the Social Security Administration seeking review of a decision

finding her ineligible for Social Security Disability ("SSD") benefits and

Supplemental Security Income ("SSI") benefits, pursuant to Title II of the Social

Security Act.  Smith requests that the Court reverse the Commissioner's decision

and remand the case solely for the calculation of benefits or, alternatively, remand

for a new hearing.

        For the reasons set forth below, the case is remanded for a new hearing.

---

[1] Martin O'Malley is now the Commissioner of the Social Security Administration.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current
Commissioner is substituted for the prior Commissioner as the defendant in this
action.

# I. BACKGROUND

## A. Procedural History

On February 10, 2020, Smith filed applications for both SSD and SSI benefits, alleging a disability onset date ("DOD") of June 5, 2017.  Administrative Record ("AR") at 16, Dkt. No. 13.[2]  The Social Security Administration ("SSA") denied both claims, first on April 24, 2020, and then again on appeal on July 2, 2020.  *Id.* at 170, 184.

Smith then requested a hearing before an Administrative Law Judge ("ALJ") on August 26, 2020.  *Id.* at 196.  On December 1, 2020, Smith, represented by counsel, attended and testified at a hearing before ALJ Zachary Weiss.  *Id.* at 109. The hearing took place by telephone.  *Id.*  For reasons not stated in the record, Administrative Law Judge Kimberly L. Schiro took over the case and issued a decision on September 1, 2021, ruling that Smith was not eligible for benefits.  *Id.* at 16–23.[3]

Smith subsequently requested review of the ALJ's decision by the Appeals Council, which was denied on January 27, 2023, rendering the ALJ's decision the final decision of the Commissioner.  AR at 1–6; Complaint ("Compl.") at 2, Dkt. No. 1.

---

[2] When referring to page numbers in the Administrative Record, the Court uses the page numbers in the bottom right of each page, not the automatic numbering created by the Electronic Case Filing system.

[3] Per Chs. I-2-8-40 and I-2-1-55(F) of the "Hearings, Appeals, Litigation, and Law" ("HALLEX") manual of the SSA, ALJ Schiro reviewed the evidence and did not conduct a new hearing.  AR at 16.

Smith timely commenced this action on March 20, 2023, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). *Id.* The Commissioner answered Smith's complaint by filing the administrative record on July 6, 2023. AR, Dkt. No. 13. On October 5, 2023, Smith submitted a brief in support of her request for review of the SSA's decision. Brief in Support of Request for Review of Social Security Decision ("Pl. Br."), Dkt. No. 14. The Commissioner submitted a brief arguing that the Court should uphold the ALJ's decision. Brief in Opposition to Plaintiff's Request for Review of a Social Security Decision ("Def. Br."), Dkt. No. 15. On November 17, 2023, Smith submitted her reply brief. Reply Brief in Support of Plaintiff's Request for Review ("Pl. Reply"), Dkt. No. 16.

### B. The Administrative Record

#### 1. Smith's Background

Smith was born on February 3, 1965. AR at 40. She was 52 years old on the alleged DOD. *Id.* at 242. Smith has a college degree and previously worked as a hospital admitting clerk. *Id.* at 272. She worked as a home health aide before her disability onset date and for two months after the injury giving rise to her claim occurred. *Id.*

Smith contends that she suffers from physical ailments that render her unable to work. Pl. Br. at 1. In June 2017, Smith was diagnosed with lumbosacral radiculopathy and lumbosacral disc displacement, two distinct medical conditions affecting the lower back. *Id.* at 2. Smith testified that she was injured in early June 2017 while working as a home health aide. AR at 117. Specifically, Smith was asked to move a weighted pail, which strained and injured her back. *Id.* After

the alleged injury, Smith attended various consultations and received a variety of treatments. On May 23, 2019, unnamed physicians from Augusta Orthopedic & Sports Medicine Specialists diagnosed Smith with paraspinal muscle tenderness, mild muscle spasms, and restricted spine motion. *Id.* at 415. Dr. Indu Garg, Smith's treating physician at Montefiore Medical Center, who specializes in rehabilitation, began treating Smith on March 17, 2020, and diagnosed her with a lumbosacral spine herniated disc. *Id.* at 629. More specifically, Dr. Garg diagnosed Smith with a lumbosacral spinal stenosis in her Spinal Impairment Questionnaire. *Id.* at 672.

Smith testified at the hearing that she can sit 10 to 15 minutes at a time, she can stand for 5 to 10 minutes at a time, and she has difficulty walking. AR at 123. Smith alleges she cannot perform average cleaning tasks anymore and her pain affects her concentration. *Id.* at 123–24.

Smith testified that she was prescribed pain relief medication—Gabapentin, Meloxicam, and Baclofen—by the doctors she consulted for her spinal injury. *Id.* at 121. Smith also reported to previously being prescribed other medication for her pain relief —Diclofenac and Cyclobenzaprine. Pl. Br. at 5. In addition, Smith was recommended physical therapy by Augusta Orthopedic & Sports Medicine Specialists and advised against bed rest for more than four days. AR at 411, 418.

### 2. Relevant Medical Evidence

In her brief, Smith has provided a summary of the medical evidence contained in the administrative record. Pl. Br. at 2–6. The Commissioner has also provided a summary of the same. Def. Br. at 2–6. Having examined the record, the

Court adopts the parties' summaries as accurate and complete for purposes of the issues raised in this action. *See, e. g.*, *Thomas v. Saul*, No. 19-CV-6990 (MKV) (RWL), 2020 WL 5754672, at *1 (S.D.N.Y. July 24, 2020) (adopting parties' medical opinion summaries), *adopted sub nom. Thomas v. Comm'r of Soc. Sec.*, 2020 WL 4731421 (Aug. 14, 2020).

The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II.B below.

### 3. ALJ Hearing

Smith appeared telephonically before ALJ Weiss on December 1, 2020. AR at 107. ALJ Weiss began by noting that Smith had not submitted all the expected worker's compensation records. *Id.* at 109. Smith clarified that she submitted all the available records since she returned to work a month after her injury because she was not aware of how serious her injury was at the time. *Id.* at 110. Smith's counsel argued the only Past Relevant Work ("PRW") relevant to Smith's case was her work as a hospital attendant, which is a sedentary job at a Specific Vocational Preparation ("SVP") of 4. *Id.* at 111. SVP is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. U.S. Dep't of Labor, An Explanation of SVP (n.d.), https://perma.cc/G8LF-GJCU (last visited May 1, 2024).

Smith's counsel requested, since Smith would be 55 years old two months after the date she was last insured, that the ALJ apply the grid rule non-mechanically to Smith. *Id.* at 112–15. The grid rule is a method used to determine

5

disability onset dates for SSI and is specifically applied to individuals who are typically age 50 or older, have limited education, and have only unskilled or no work experience. Under the grid rule, the SSA uses a series of tables to determine disability based on the individual's Residual Functional Capacity ("RFC") and other relevant factors. 20 C.F.R. pt. 404 app. 2 (2023). The ALJ reviewed the HALLEX manual's borderline age provision, I-2-242, which states that the closer an individual is to 55, the more disadvantageous that would be to their occupational chances. *Id.* at 115. The ALJ asked Smith's counsel to identify factors besides age that might hinder Smith's employment. Smith's attorney requested more time to respond, but the ALJ concluded that the fact she has a college education and that she speaks English weighed against her position. *Id.* at 116. Nevertheless, the ALJ stated that this inquiry would only matter if he ultimately determined that Smith cannot work. *Id.* at 116.

In response to her counsel's questions, Smith testified that her most recent job was as a home health aide. She last worked on June 15, 2017, due to a back injury from moving a heavy pail. *Id.* at 117. Prior to working as a home health aide, Smith worked at Bronx Lebanon Hospital for 11 years at the call center and then as a telephone operator. *Id.* at 118. Smith testified that being a telephone operator required her to be focused since she had to do overhead paging for the emergency room. *Id.* As a telephone operator, Smith "was sitting down, but it required [her] to get up and down too." *Id.* at 119. In contrast, at the call center, Smith would process referrals and lift five- to ten-pound files at a time. *Id.*

Smith testified to having undergone physical therapy.  When asked if physical therapy was helpful, Smith stated it was, in conjunction with heat placed on her back.  *Id.* at 121.  Smith stated she took other measures to address her pain, such as attending a spine clinic.  *Id.*  Smith also testified she was prescribed Meloxicam and Baclofen for her muscle spasms, and more recently she was also prescribed Gabapentin for her pain.  *Id.*  Smith explained the medicine helped relieve pain at times, but not when she felt pain at a level of 8 or 9 out of 10.  *Id.*  Moreover, Smith stated the medicine impacts her movement.  *Id.* 121–22.

The ALJ then posed a series of questions.  First, the ALJ asked Smith if anyone had recommended that she have surgery.  *Id.* at 122.  Smith replied a doctor asked for her MRIs and was going to "take steps from there to see what's required."  *Id.*  The ALJ next asked Smith if she takes the bus or train.  *Id.*  Smith responded that she commutes on the bus and train, which are now large physical strains for her.  *Id.*  Smith also stated that after her injury, walking is too painful for her: "I used to walk, like, a tenth of a block before my back start hurting.  Now, it seems like [as] soon as I start [walking it is painful]."  *Id.*  Smith stated she felt pain at a level of 8 out of 10 even after taking Gabapentin.  *Id.*

Smith testified further that she can only sit for about 10 to 15 minutes until she has to stand up.  *Id.* at 123.  When asked about how long she can stay standing, Smith replied she can stand for around 5 to 10 minutes.  *Id.*  She stated she tries to walk to make sure her muscles don't atrophy.  *Id.*  Smith also clarified she cannot do much activity around the house, like mopping or cleaning appliances.  *Id.*

Lastly, the ALJ questioned Smith about her concentration.  *Id.* at 124.  Smith answered that her concentration is not good, especially when she is in pain.  *Id.*

The ALJ then examined Dr. Robert Kendrick, a physician and board-certified orthopedic surgeon and a Medical Expert ("ME"), regarding Smith's medical condition.  *Id.* at 124–27.  After the ALJ established the ME's qualifications to give orthopedic opinions in Social Security disability cases,  *id.* at 124,  the ME testified that

> [Smith] has a primary problem with her lower back, primarily degenerative disc disease.  Multiple levels, from L3 to S1 noted on an MRI scan in 3F, 4 and it was taken in May of 2019.  She has some mild to moderate foraminal stenosis which I don't consider significant in terms of disability . . . it would take more than that to cause any damage to nerves.

*Id.* at 125.  The ME continued by reviewing Dr. Garg's study results of Smith as her treating physician.  *Id.*  Dr. Garg, a physical medicine and rehabilitation specialist, noted Smith has mild S1 radiculopathy—which is when there is compression of nerves in an individual's lower back—on her left side and that she is severely obese. *Id.*  The ME testified that is the extent of her severe physical impairments.  *Id.*

The ME then offered his view that Smith does not meet any disability listing available because she does not have any loss of motor sensory function.  *Id.* at 126. Due to these circumstances, the ME found Smith falls in "the sedentary work profile" because of her chronic pain.  *Id.*  Moreover, the ME stated that there was evidence in the record of an exaggeration of her pain.  *Id.*  Specifically, he testified that were Smith truly suffering from pain on a scale of 10 out of 10, she would not

have attended an appointment with her primary care physician but gone to the hospital. *Id.*

Smith's counsel followed up with the ME regarding whether Smith's chronic pain would impact her attention and concentration. *Id.* at 127. The ME replied that it would, in moments when Smith is experiencing severe pain. *Id.* Counsel then asked if severe lower-back pain would be a reasonable cause to miss work. The ME responded that Smith's lower back pain would be a reasonable basis to miss work, but there is no way to estimate how frequently this would occur. *Id.* at 127–28. Following this testimony, the ALJ stated: "I think I understand this case. You know, I have to make a decision about her pain, and certainly she would qualify for disability as of her 55th birthday which she might very well reach if there are any delays in this case." *Id.* at 128.

Lastly, the ALJ questioned Cheris Powell, the Vocational Expert ("VE"). The VE testified that Smith's previous work as a hospital admitting clerk is a "sedentary physical" demand profession which has an SVP of four and is semi-skilled work. *Id.* at 129. The ALJ asked the VE what the maximum amount of time was that a person can be off task on a job. *Id.* at 129–30. The VE replied that employers would tolerate an employee being off task ten percent of a workday. *Id.* at 130. The VE also stated an employer will tolerate an employee being absent from work unexpectedly once per month. *Id.* Following a question from counsel for Smith, the VE stated a hospital admitting clerk can be off task 10 percent of the workday and still maintain her job. *Id.*

### 4. ALJ Decision

ALJ Schiro took over the case from ALJ Weiss after the hearing. *Id.* at 16. On September 1, 2021, ALJ Schiro denied Smith's application in an 8-page decision. *Id.* at 16–23. After reviewing the record and a recording of the hearing, She concluded that Smith lacked a qualifying disability as defined in the Social Security Act from June 5, 2017, her disability onset date, through the date of the decision. *Id.* at 23.

After describing the five-step test set forth in the SSA regulations, the ALJ first found that Smith meets the insured status requirements of the Social Security Act and that she had not engaged in "substantial gainful activity" since June 5, 2017. At step two, the ALJ found that Smith had the following severe impairments: degenerative disc disease of the lumbar spine and obesity. *Id.* at 19. However, the ALJ found that Smith did not meet the requirements for step three of the analysis. *Id.* Specifically, the ALJ concluded Smith did not have an impairment or combination that meets or medically equals the severity of one of the listed impairments. *Id.*

At step four, the ALJ concluded that Smith has the RFC to perform the full range of sedentary work as defined in 20 C.F.R §§ 404.1567(a) and 416.967(a). *Id.*

The ALJ, after reviewing the record evidence, found Smith's medically determinable impairments could be causing her alleged symptoms; however, she opined that Smith's statements relating to her symptoms were not consistent with the medical evidence in the record. *Id.* at 20–21. Specifically, the ALJ acknowledged Smith's chronic low back pain was documented in the record and that

10

she has found no pain medication or other conservative treatment, including physical therapy, helpful in alleviating the pain.  *Id.* at 21.  Ultimately, however, the ALJ determined that "the evidence of record does not support a finding that [her severe impairments] render her unable to perform the demands of fulltime work at the sedentary level."  *Id.*

The ALJ also discussed Smith's diagnosis of obesity and that her doctor had recommended advancing back to normal activity and against bed rest greater than four days.  *Id.*  To that end, the ALJ considered "the effect of [Smith's] obesity, both alone and in combination with the orthopedic complaints in determining the residual functional capacity."  *Id.*  The ALJ concluded there is no indication that Smith's obesity has produced any significant limiting symptoms or "end organ" manifestations.  *Id.*

The ALJ next considered the ME's testimony and found it was well supported by the record.  After reviewing the ME's testimony, the ALJ concluded that it was "consistent with the longitudinal pattern of the claimant's medical history establishing that the claimant's impairments are not completely disabling."  *Id.*

The ALJ also reviewed Dr. Garg's spinal impairment questionnaire and concluded that its findings were unpersuasive.  *Id.* at 22.  Dr. Garg was Smith's treating orthopedist and physical medicine specialist and submitted the questionnaire in August 2020.  *Id.*  The ALJ noted that Dr. Garg opined that Smith's symptoms and related limitations applied as far back as June 15, 2017, consistent with the alleged DOD.  *Id.*  The clinical evidence to support the

11

impairment included limited range of motion in the lumbar spine with tenderness, muscle spasm, sensory loss, and muscle weakness. *Id.* The ALJ was critical of Dr. Garg for simply making a passing reference to "multiple trigger points at the lumbar spine without further elucidation." *Id.* Dr. Garg opined that Smith could not sit for more than an hour in an eight-hour workday and could not stand or walk for longer than an hour. *Id.* The ALJ highlighted that she did not specify how frequently Smith "must get around and move or how long prior to when the claimant can resume sitting." *Id.* Dr. Garg also opined that Smith would need to take unscheduled breaks to rest every one to two hours and would likely be absent from work more than three times a month. *Id.* Ultimately, the ALJ concluded that the record evidence, including diagnostic findings and positive findings on physical examination, did not support such extreme exertional limitations. *Id.* Therefore, the ALJ found Dr. Garg's opinion was inconsistent with other opinions, such as Dr. Kendrick's.

Lastly, the ALJ considered the prior administrative medical findings and determined they were unpersuasive. The ALJ observed that the state agency doctors—Drs. Patel and Ahmed—who reviewed Smith's disability claim found that she retained the capacity to "perform light work activity, except [she] could never climb ladders, ropes, and scaffolds, limited to frequent balancing, and only occasional stooping, kneeling, crouching, and crawling." *Id.* However, the ALJ noted the evidence in the record, including the findings from physical examinations, supported the argument that Smith is able to exert more than she claims is

possible.  *Id.*  Therefore, the ALJ found the state agency assessment to be unpersuasive.  *Id.*

At the conclusion of step four, the ALJ found, based on all the medical evidence, that Smith was restricted to performing a sedentary range of work that adequately accommodates the extent of her symptoms.  *Id.*

At step five, the ALJ determined Smith is capable of performing past relevant work as a hospital admitting clerk.  The ALJ noted Smith performed this "position long enough to achieve average performance, and Smith performed this position during the relevant period."  Moreover, the ALJ found this past work does not require the performance of work-related activities precluded by Smith's impairments.  *Id.*  Therefore, the ALJ concluded Smith is able to perform her past work "as actually and generally performed."  *Id.* at 23.

## II. DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the district court of the United States for the judicial district in which the plaintiff resides."  42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating the judicial review provided in § 405(g) for SSI).  The district court must determine whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a

13

mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (cleaned up)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (cleaned up)).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (emphasis omitted) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722

F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing."  42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence."  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (alteration in original) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).

In certain circumstances, the court may remand a case solely for the calculation of benefits, rather than for further administrative proceedings.  "In . . . situations[ ] where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, [the court has] opted simply to remand for a calculation of benefits."  *Michaels v. Colvin*, 621 F. App'x 35, 38–39 (2d Cir. 2015) (summary order) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (internal quotation marks omitted)).  The court may remand solely for the calculation of benefits when "the records provide[ ] persuasive evidence of total disability that render[s] any further proceedings pointless."  *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999).

## 2. Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  "[T]he ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period . . . following the date of his claim."  *Love v. Kijakazi*, No. 20-CV-1250 (EK), 2021 WL 5866490, at *5 (E.D.N.Y. Dec. 10, 2021) (quoting *Williams v. Colvin*, No. 15-CV-144 (WMS), 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)); *see also Milliken v. Saul*, No. 19-CV-9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) ("A 'closed period' of disability occurs where a claimant is found by the Commissioner to be disabled for a finite period of time which began and ended prior to the date of the agency's administrative determination of disability.").

In assessing a claimant's impairments and determining whether they meet the statutory definition of disability, the Commissioner "must make a thorough inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'"  *Mongeur*, 722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)).

Specifically, the Commissioner's decision must consider factors such as: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Id.* (citations omitted).

### a. Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled." *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner establishes whether the claimant is presently employed. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is considered disabled. *Id.*; 20 C.F.R. § 404.1520(d).

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether

the claimant possesses the ability to perform any other work.  20 C.F.R.

§ 404.1520(a)(4)(v).

The claimant has the burden at the first four steps.  *Burgess v. Astrue*, 537

F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the

Commissioner at the fifth and final step, where the Commissioner must establish

that the claimant has the ability to perform some work in the national economy.

*See, e.g.*, *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b. Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in

determining whether a claimant is disabled under the [Social Security] Act."  *Pena*

*ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y.

Mar. 25, 2013) (internal quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(d),

416.927(d)).  For Supplemental Social Security Income and Social Security

Disability Insurance applications filed prior to March 27, 2017, SSA regulations set

forth the "treating physician rule," which required an ALJ to give more weight to

the opinions of physicians with the most significant clinical relationship with the

plaintiff.  20 C.F.R. §§ 404.1527(c)(2), 416.927(d)(2); *see also, e.g., Taylor v.*

*Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).  Under the treating physician rule,

an ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if she

determined that a treating physician's opinion was not entitled to "controlling

weight," or at least "more weight," than the opinions of non-treating and

non-examining sources.  *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y.

2000).  In addition, a consultative physician's opinion was generally entitled to "little weight." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the evaluation of medical opinions for claims like Smith's filed on or after March 27, 2017.  *See* Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017).  "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *19 (S.D.N.Y. Sept. 24, 2021) (citing 82 Fed. Reg. 5844).  The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)).  "Instead, an ALJ is to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).  Under the new regulations, the ALJ must "explain how he considered" both the supportability and consistency factors, as they are "the most important factors."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ*

*v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 160 (S.D.N.Y. 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors).  Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) *adopted by* 2022 WL 717612 (Mar. 10, 2022).  With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion).  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[W]hen the opinions offered by two or more medical sources about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, the ALJ [should] articulate how he considered the remaining factors in evaluating the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8

(W.D.N.Y. 2021) (quotation marks removed) (citing 20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3)).

Courts considering the application of the new regulations have concluded

that "the factors are very similar to the analysis under the old [treating physician]

rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp.

3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting

cases) ("[T]he essence of the rule remains the same, and the factors to be considered

in weighing the various medical opinions in a given claimant's medical history are

substantially similar."). "This is not surprising considering that, under the old rule,

an ALJ had to determine whether a treating physician's opinion was supported by

well-accepted medical evidence and not inconsistent with the rest of the record

before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at

*9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL

5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were

foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency

"is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021

WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*,

No. 20-CV-7749 (SLC), 2022 WL 819910, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must

explain in all cases how [he or she] considered" supportability and consistency);

*Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at

*22 (S.D.N.Y. Dec. 30, 2020), *adopted by* 2021 WL 134945 (Jan. 14, 2021)

(remanding so ALJ can "explicitly discuss both the supportability and consistency of the consulting examiners' opinions"). "An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler*, 546 F.3d at 265). However, the Court need not remand the case if the ALJ only committed harmless error, *i.e.*, where the "application of the correct legal principles to the record could lead only to the same conclusion.*" Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### c. Assessment of a Claimant's Subjective Complaints

Assessment of a claimant's subjective complaints about his or her symptoms or the effect of those symptoms on the claimant's ability to work involves a two-step process. Where a claimant complains that certain symptoms limit his or her capacity to work, the ALJ is required, first, to determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce" the symptoms alleged. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Assuming the ALJ finds such an impairment, then the ALJ must take the second step of "evaluat[ing] the intensity and persistence of [the claimant's] symptoms," considering "all of the available evidence," to determine "how [the] symptoms limit [the claimant's] capacity for work." *Id.* §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ must consider all of the available evidence, and must not "reject [ ] statements about the intensity and persistence" of the claimant's symptoms "solely because the available objective medical evidence does not

substantiate [the claimant's] statements." *Id.* §§ 404.1529(c)(2), 416.929(c)(2).

Instead, where the claimant's contentions regarding his or her symptoms are not

substantiated by the objective medical evidence, the ALJ must evaluate the

claimant's statements in relation to the objective evidence and other evidence, in

order to determine the extent to which the claimant's symptoms affect his or her

ability to do basic work activities. *Id.* §§ 404.1529(c)(3)–(4); *id.* §§ 416.929(c)(3)–(4);

*see also* SSR 16-3p.26

     While an ALJ is required to take a claimant's reports of her limitations into

account in evaluating her statements, an ALJ is "not required to accept the

claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46,

49 (2d Cir. 2010). To the extent the ALJ determines that the claimant's statements

are not supported by the medical record, however, the ALJ's decision must include

"specific reasons for the weight given to the individual's symptoms, be consistent

with and supported by the evidence," and the reasons must be "clearly articulated"

for a subsequent reviewer to assess how the adjudicator evaluated the individual's

symptoms. SSR 16-3p. The factors that an ALJ should consider in evaluating the

claimant's subjective complaints, where they are not supported by objective medical

evidence alone, are: (1) the claimant's daily activities; (2) the location, duration,

frequency, and intensity of the symptoms; (3) precipitating and aggravating factors;

(4) the type, dosage, effectiveness, and side effects of any medications taken to

alleviate the symptoms; (5) any treatment, other than medication, that the claimant

has received for relief of the symptoms; (6) any other measures that the claimant

employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); *id.* §§ 416.929(c)(3)(i)-(vii).

### B. Analysis

Smith argues that the Commissioner's decision should be reversed solely for an award of benefits or, in the alternative, be remanded for a new hearing because (1) the ALJ failed to properly evaluate the medical opinion evidence and failed to properly determine Smith's RFC; and (2) the ALJ failed to properly evaluate Smith's subjective statements. Specifically, Smith contends that the ALJ erred to the extent that she concluded the opinion of Dr. Garg was unpersuasive without providing meaningful review of the submitted evidence; that the ALJ failed to address the testimony from Dr. Kendrick, the non-examining consultant, that supported a disability diagnosis; and that the ALJ used boilerplate language instead of sufficiently explaining why Smith's subjective statements regarding her impairments were not consistent with the evidence. Pl. Br. at 6–15.

The Commissioner counters that the ALJ properly weighed the medical opinion evidence, and that substantial evidence supports the RFC findings; and that the ALJ reasonably assessed Smith's subjective statements. Specifically, the Commissioner argues that the ALJ reviewed and considered Dr. Garg's opinion and properly addressed the supportability and consistency factors; and the ALJ did not rely on boilerplate language when assessing Smith's statements. Def. Br. at 16–23.

For the following reasons, Smith has the better of the argument.

### 1. The ALJ Failed to Properly Evaluate the Medical Opinion Evidence

Smith contends, and the Court agrees, that the ALJ's evaluation of the opinion from Dr. Garg was "fatally flawed." Pl. Br. at 8.

It is well-settled that remand is warranted where the ALJ fails to provide "good reasons" for assigning reduced weight to the opinions of a claimant's treating physician. *Ferraro v. Saul*, 806 F. App'x 13, 15–16 (2d Cir. 2020). When an ALJ does not explain why an opinion from a treating source is rejected, then the reviewing court cannot perform a full and fair review of the decision. *See, e.g., Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." (quoting *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998))).

SSA regulations require the ALJ to explicitly discuss the supportability and consistency of each medical opinion in making the RFC determination, and the failure to do so constitutes legal error. *See, e.g., Acosta Cuevas*, 2021 WL 363682, at *14 (regulations "require an ALJ to explain how persuasive she found the medical opinions she considered, and specifically, how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole"); 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency."). The ALJ must "explain her findings regarding the supportability and consistency for each of the medical opinions [by] pointing to specific evidence in the record supporting those

25

findings." *Raymond M. v. Comm'r of Soc. Sec.,* No. 19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (cleaned up).  The ALJ is "free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record." *Lisa T. v. Comm'r of Soc. Sec.*, No. 21-CV-469 (DB), 2023 WL 203363, at *5 (W.D.N.Y. Jan. 17, 2023).

The ALJ determined that Dr. Garg's opinion was "unpersuasive."  AR at 22. Specifically, the ALJ found Dr. Garg's opinion not to be "consistent with the other opinions of the record" including the ME (although she does not identify any other opinions in the record as to which Dr. Garg's opinion is not consistent).  *Id.* Therefore, the ALJ needed to explicitly discuss the supportability and consistency of Dr. Garg's opinion, which she failed to do.

### a. Supportability

The ALJ erred by not properly considering the supportability of Dr. Garg's opinion.  Evaluating supportability "is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas,* 2021 WL 363682, at *10.  Supportability, "under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion." *Rivera*, 2020 WL 8167136, at *16 (internal quotations and citations omitted).

Here, the ALJ acknowledged that Dr. Garg began treating Smith in August 2020, and submitted a spinal impairment questionnaire and clinical findings in support of Smith's supposed impairment, which included her recommendation that Smith not sit or stand in a work setting.  AR at 22.  But the ALJ followed up by

concluding that Dr. Garg's findings were not persuasive. *Id*. In doing so, instead of the required analysis, the ALJ simply listed Smith's medical history and findings without reviewing how such evidence did not support Dr. Garg's overall finding of an impairment. The ALJ focused only on how Dr. Garg did not specify how often Smith would need to move or when she can resume sitting. *Id*. The ALJ determined the evidence "including diagnostic findings and positive findings on physical examination" did not support Dr. Garg's findings and were thus unpersuasive. AR at 22. Such boilerplate language does not indicate with any specificity what the ALJ found to be problematic with the medical findings; therefore, her decision failed to properly consider the substantive evidence as required in order to meet the supportability standard. *See, e.g., Velasquez*, 2021 WL 4392986, at \*26.

Moreover, in her decision, the ALJ did not provide meaningful review of the evidence submitted by Dr. Garg. In the spinal impairment questionnaire, Dr. Garg was asked to "identify the positive clinical findings that demonstrate and/or support your diagnosis and include location." AR at 673–74. As in *Salerno v. Berryhill*, Dr. Garg provided responses to that question and cited various clinical findings but "it is unclear whether the ALJ overlooked these responses or did not find these responses satisfactory." No. 13-CV-4600 (KMK) (LMS), 2017 WL 3106342, at \*12 (S.D.N.Y. June 23, 2017), *adopted by* 2017 WL 3098106 (July 20, 2017). All the ALJ did was note that Dr. Garg checked on the form that Smith has limited range of motion in her lumbar, tenderness in her lumbar, muscle spasm in her lumbar,

27

sensory loss in her lumbar, muscle weakness in her lumbar, and that she has trigger points.  AR at 22.  The ALJ, however, did not engage with this evidence in her discussion; therefore, she did not properly consider the supportability of Dr. Garg's opinion.  *See, e.g., Navedo v. Kijakazi*, 616 F. Supp. 3d 332, 347 (S.D.N.Y. 2022) (citing *Acosta Cuevas*, 2021 WL 363682, at \*14 (ALJ failed to properly apply supportability factor where "[n]owhere in [her] decision [did] she explain, as the new regulations require, what the respective [physicians] used to support their opinions and reach their ultimate conclusions")).

The Commissioner argues the ALJ satisfied the supportability requirement by noting the clinical evidence.  Def. Br. at 17.  But merely identifying clinical evidence without more is insufficient to satisfy the supportability prong of the analysis.  It is not enough to cite to "some objective medical evidence in the record" and simply conclude that an opinion is "consistent with other evidence in the file" rendering it "persuasive," or in this case unpersuasive.  *Acosta Cuevas*, 2021 WL 363682, at \*14.  Simply put, the ALJ did not explain how the evidence submitted by Dr. Garg failed to support her opinion.  *Cf. Diaz v. Kijakazi*, No. 20-CV-10346 (JLC), 2022 WL 4352470, at \*12 (S.D.N.Y. Sept. 20, 2022*)* (ALJ satisfied supportability factor by finding that "the medical opinion was unpersuasive because 'the findings of moderate to marked limitations are not well supported by the examination, and the degree of limitation is not well defined'"); *Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819810, at \*10 (S.D.N.Y. Mar. 18, 2022) (ALJ satisfied

supportability factor by "analyzing [physician assistant's] underlying treatment records against her opinion, and finding an incongruity").

### b. Consistency

The ALJ also insufficiently analyzed the consistency factor in her evaluation of the medical evidence because she failed to consider (1) the treating physician's opinion in light of the entire record; and (2) how the various medical opinions were consistent with one another.  "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them." *Acosta Cuevas*, 2021 WL 363682, at *10.  An ALJ is "expressly authorized – indeed, required – to consider whether [a physician's] opinion [is] consistent with the entire record." *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022).  Consideration of the entire record entails weighing "all of the evidence available." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

The ALJ did not address other objective findings and contemporaneous clinic notes that were consistent with Dr. Garg's opinion.  As provided in 20 C.F.R. § 404.1520c(c)(2), "[t]he more consistent . . . medical opinion(s) . . . [are] with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  Here, the clinical evidence provided includes MRI and x-ray imaging of the spine, which document extensive degenerative findings with a narrowing of the spine.  AR at 378, 471.  In addition to the MRI, an EMG demonstrated the presence of radiculopathy, which indicated nerves in Smith's spine are compromised.  *Id.* at 610–11.

29

The ALJ also failed to consider how the medical opinions of other doctors were consistent with each other.  An ALJ's "failure to consider the consistency of the physicians' opinions with each other . . . constitutes legal error." *Williams v. Saul*, No. 19-CV-10443 (AT) (JLC), 2020 WL 6385821, at *13 (S.D.N.Y. Oct. 30, 2020) *adopted by* 2020 WL 7337864 (Dec. 14, 2020); *see also* 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2).  The ALJ must take into account the consistency (or lack thereof) across all physicians, as "[i]t is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports [her] determination, without affording consideration to evidence supporting the plaintiff's claims." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975)).

Here, the ALJ relied heavily on Dr. Kendrick's testimony in finding that Smith was not disabled, but failed to address the portions of that testimony that are, in fact, consistent with Dr. Garg's disability finding.  Both Dr. Kendrick and Dr. Garg noted Smith's attention and concentration would be affected on days she has severe pain and it would cause her to miss work.  *See* AR at 127, 129–30, 677–78. Despite consistency between Dr. Garg's testimony, Dr. Kendrick's testimony, and the medical evidence, the ALJ only found Dr. Kendrick's overall medical opinion to be well supported.  AR at 21.  The ALJ agreed with Dr. Kendrick's testimony that Smith was limited to sedentary exertion, but not disabled because of her pain.  AR at 126.  The ALJ noted, however, that Dr. Kendrick could not estimate how frequently Smith would miss work due to her pain; nevertheless, that did not deter

her from finding his opinion to be persuasive.  *Id.* at 21.  Dr. Garg, in contrast, stated Smith's pain would frequently interfere with work and she would most likely miss work three times a month.  Notwithstanding this greater specificity, the ALJ still considered Dr. Garg's medical opinion to be unpersuasive.  *Id.* at 22.

In sum, the ALJ's failure to sufficiently analyze the supportability and consistency of Dr. Garg's evaluation is grounds for remand.  20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c).

### 2.  The ALJ Failed to Properly Assess Smith's Subjective Statements

The ALJ's cursory finding that Smith's statements and allegations regarding her physical impairments are "not entirely consistent" with the evidence, AR at 20–21, without more, is not a sufficient or proper explanation for discounting her testimony.  And that is essentially all the ALJ offered in her decision.

In the Second Circuit, a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988).  In order to evaluate a claimant's subjective statements, the ALJ must follow a two-step framework.  *See, e.g., Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)); *Shand v. Kijakazi*, No. 22-CV-7479 (JLC), 2023 WL 5162994, at *9 (S.D.N.Y. Aug. 11, 2023); 20 C.F.R. § 404.1529(c)(3)(i)–(vii).  Importantly, "[a]n ALJ must use more than just the boilerplate language to explain how [the claimant is] incredible."  *Williams v. Berryhill*, No. 17-CV-1660 (JMA), 2019 WL 1271647, at *5 (E.D.N.Y March 19, 2019).

At step one, the ALJ determined there was an underlying medically determinable physical impairment that could have caused the alleged symptoms: degenerative disc disease of the lumbar spine with accompanying mild to moderate foraminal stenosis and mild radiculopathy, and obesity.  AR at 20.

At step two, the ALJ observed that although Smith has severe impairments, her statements concerning her "intensity, persistence and limiting effects of those symptoms are not *entirely consistent* with the medical evidence and other evidence in the record for the reasons in this decision."  AR at 20–21 (emphasis added).  But she did not go beyond that generalization.  Although the ALJ did not (and need not) discuss all of the applicable factors in her reasoning, the analysis did not proceed with enough specificity "to permit intelligible plenary review of the record." *Williams,* 2019 WL 1271647, at *5.  Here, the ALJ only summarized the evidence in the record regarding Smith's back pain and noted the type of treatment Smith has used, although unsuccessfully, to address her pain.  AR at 21.  The ALJ provided no analysis of the type of treatments used and why Smith's testimony about them should be discounted.  *Id.*  The ALJ's decision did not illustrate what was and was not consistent between Smith's testimony and the medical opinions.

Moreover, as in *Williams*, the ALJ used boilerplate language that Smith's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; [but her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

32

2019 WL 1271647, at *5 (using same language); AR at 21.  Here, as in *Williams*, the ALJ merely recited Smith's medical history, which falls "short of a proper credibility analysis in accordance with the Commissioner's regulations and case law."  *Id*.  In addition, such use of boilerplate language effectively allows the ALJ to "substitute [her] own judgment for competent medical opinion."  *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009); *see also McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion" and "[w]hile an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [s]he is not free to set [her] own expertise against that of a physician who testified before [her]" (citation and internal quotation marks omitted))).  Based on the lack of analysis and use of boilerplate language, the ALJ did not properly assess Smith's subjective statements.  This failure constitutes a separate ground for remand.

### III. CONCLUSION

For the foregoing reasons, the case is remanded pursuant to sentence four of

42 U.S.C. § 405(g).[4]  The Clerk is directed to enter judgment for plaintiff.


**SO ORDERED.**

Dated: May 6, 2024
      New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

---

[4] The Court is mindful of Smith's request for this case to be remanded solely for the calculation of benefits.  However, "a calculation-only remand is appropriate when the record . . . 'provides persuasive evidence . . . that render[s] any further proceedings pointless.'"  *Vasquez o/b/o A.T.R. v. Saul*, No. 16-CV-4791 (ENV), 2020 WL 2933857, at *6 (E.D.N.Y. June 2, 2020) (citing *Williams*, 204 F.3d at 50). Remanding solely for the calculation of benefits "is considered an extraordinary action," and, given the issues still to be resolved, is not appropriate at this juncture of the case.  *Robinson ex rel A.A.M. v. Comm'r,* No. 19-CV-6172 (JJM), 2020 WL 4333339, at *6 (W.D.N.Y. July 28, 2020).  Moreover, Smith does not provide any analysis or authority as to why this extraordinary remedy is appropriate in these circumstances.